# SINGLE FAMILY RESIDENCE OR CONDOMINIUM LEASE

1. **PARTIES:** The parties to this lease are:

   The owner of the Property, Landlord, *510 SFR GA Operations I LLC*; and Tenant(s): *Christopher J Ross*.

2. **AGREEMENT TO LEASE:** Landlord leases to Tenant, and Tenant leases from Landlord, the residential dwelling with the following address:
   Address: *1032 Winterglen Way Austell Cobb County GA 30168-6126*, the following additional items of personal property are included: *N/A.*

   The real property and the personal property are collectively called the "Property".

3. **TERM:**
   **A.** Primary Term: The primary term ("Primary Term") of this lease begins and ends as follows:

   Commencement Date: *June 06, 2026* Expiration Date: *June 05, 2027*

   **B.** Delay of Occupancy: Tenant must occupy the Property within 5 days after the Commencement Date. If Tenant is unable to occupy the Property by the 5th day after the Commencement Date because of construction on the Property (as long as said construction is not the result of Tenant's actions) or a prior tenant's holding over of the Property, Tenant may terminate this lease by giving written notice to Landlord before the Property becomes available to be occupied by Tenant, and Landlord will refund to Tenant the security deposit and any rent paid. Landlord will abate rent on a daily basis for a delay caused by such construction or a prior tenant's holding over. This paragraph does not apply to any delay in occupancy caused by cleaning, repairs, or make-ready items. Landlord shall not be liable for any delay in the delivery of the Property to Tenant.

**4. AUTOMATIC RENEWAL, MONTH TO MONTH RENTAL RATE AND NOTICE OF TERMINATION:**

A. This lease automatically renews on a month-to-month basis unless Landlord or Tenant serves the other party written notice of termination not less than Forty Five (45) days before the Expiration Date.

B. If this lease automatically renews on a month-to-month basis, it will continue to renew on a month-to-month basis until either party serves written notice of termination to the other party pursuant to Georgia Law.

C. The monthly rental rate for any month-to-month lease will increase by Twenty (20%) percent over the monthly rental rate stated in paragraph 5B or if the lease is a renewal, the monthly rent paid under the most recent lease renewal.

D. Oral notice of termination is not sufficient under any circumstances. Time is of the essence for providing notice of termination (strict compliance with dates by which notice must be provided is required).

5. **RENT:**

A. <u>Prorated Rent</u>: On or before *June 06, 2026* Tenant will pay Landlord *$1,729.00* as prorated rent from the Commencement Date through the last day of the month in which this lease begins.

B. <u>Monthly Rent</u>: Tenant shall pay Landlord monthly rent for each full month during the term of this Lease. The first full month's rent shall be due and payable no later than *July 01, 2026*. Thereafter, Tenant shall pay monthly rent on or before the first day of each month throughout the term of this Lease in accordance with the following rental installments:

Month *June 06, 2026* to Month *June 05, 2027* Monthly Rent due in the amount of *$2,075.00*
Month to Month Monthly Rent due in the amount of *$N/A*
Month to Month Monthly Rent due in the amount of *$N/A*

**Weekends, holidays, and mail delays shall not excuse Tenant's obligation to timely pay rent to ensure Landlord receives rent on or before the first day of each month.**

C. <u>Lease Administrative Fee(s): Tenant(s) shall pay administrative fee(s) for the following:</u>

(1) An initial lease preparation fee in the amount of $150.00 prior to the Commencement Date of this lease.
(2) A lease renewal fee in the amount of $50.00 prior to the Commencement Date of the renewal lease.
(3) A lease processing fee in the amount of $100.00 for all requested lease modifications.
(4) A monthly fee of $100.00 should this lease renew on a month-to-month basis, not including any applicable rental rate increase.

D. <u>Resident Benefits Package ("RBP") Program and Fee:</u> Tenant agrees to pay a Resident Benefits Package Fee of $<u>49.95</u> per month ("RBP Fee") as more particularity set forth in the Resident Benefits Package (RBP) Lease Addendum. RBP Fee shall be billed and due from Tenant at Move-In and on the 1st of each month as part of the monthly payment.

E. <u>Rent Increases</u>: There will be no rent increases through the Primary Term. Landlord may increase the rent that will be paid during any month-to-month renewal period by providing at least 45 days written notice to Tenant.

**6. Method and Place of Payment:**

(1) Tenant will remit all amounts due Landlord under this lease ("Payments") to the Landlord's broker, HomeRiver Group (defined below as "Manager").
(2) HomeRiver Group provides an electronic portal ("**Portal**") which Tenant must use to remit all Payments. Access to the **Portal** will be provided to Tenant prior to execution of this lease.
(3) If Tenant is unable to make Payments to the Portal for any reason, Payments must be made by check, money order or cashier's check payable to HomeRiver Group and delivered to the following address: (i) for standard mail **<u>1719 Route 10</u>**
**<u>Suite 219</u>**
**<u>Parsippany, NJ 07054</u>** (ii) for overnight delivery **<u>HomeRiver Group</u>**
**<u>9050 W Overland Road Suite 250</u>**

**Boise, ID 83709**. Please include the Property address and Tenant name on payment for proper crediting.

(4) Landlord may later designate, in writing, another person or place to which Tenant must remit Payments.

(5) Tenant must make all Payments timely and without demand, deduction, or offset, except as permitted by law or this lease.

(6) Time is of the essence for all of Tenant's obligations in this lease, including the payment of rent. Strict compliance with rental due dates is required.

(7) If Tenant fails to make timely Payments or if any Payments are dishonored, Landlord may require all subsequent Payments in bank-certified funds. This paragraph does not limit Landlord from seeking other remedies under this lease for Tenant's failure to make timely Payments with good funds.

**7. LATE CHARGES:**

A. If Landlord does not actually receive a rent payment in the full amount at the designated place of payment by 11:59 p.m. on the 1st day of the month in which it is due, Tenant will pay Landlord for each late payment an initial late charge on the 3rd day of the month equal to $55.00 and additional late charge of $20.00 per day beginning on the 4th day of the month until rent and late charges are paid in full. Total late charges (initial and additional) may not exceed $375.00 in any one month.

B. For the purposes of paying rent and any late charges, receipt by Landlord shall be the date of payment (the postmark date is not the date Landlord receives the payment). The parties agree that the late charge is based on a reasonable estimate of uncertain damages to the Landlord that are incapable of precise calculation and result from late payment of rent.

**8. RETURNED CHECKS:**

Tenant will pay Landlord $30.00 (*not to exceed $30.00*) for each payment Tenant tenders to Landlord which is returned or not honored by the institution on which it is drawn for any reason, plus any late charges until Landlord receives good funds. Tenant must make any dishonored payment good by paying such amount(s) plus any associated charges in bank-certified funds.

**9. DISPOSSESSORY FEE:**

Notwithstanding anything to the contrary contained herein, in the event of default by Tenant, Landlord may file a dispossessory action in the county in which the Property is located. In the event that a dispossessory action is filed against the Tenant and then dismissed prior to a court hearing because Tenant pays the amounts owed, Tenant shall pay an additional fee of $150.00 to cover the costs of filing fees, court costs, attorney fees, plus an administrative $100.00 per dispossessory action.

**10. SECURITY DEPOSIT:**

A. Tenant has paid a refundable security deposit to **HomeRiver Group** ("Holder") in the amount of *$2,075.00* ("Security Deposit") by: *[Select one. Any box not selected shall not be a part of this Agreement.]*

☒ Certified Funds (Cashier's Check, Money Order or ACH)

Additional Security Deposit Terms: *n/a*

B. **Deposit of Same:** Holder shall deposit the Security Deposit within five (5) banking days of receiving the
same into the bank listed below:

☒ **1.** Escrow/Trust at *Wells Fargo*
☐ **2.** General at ___
If the Security Deposit is in a general account, it will not be segregated and will be co-mingled with other funds of Holder. [***NOTE:*** *This section should not be marked if Holder is a real estate licensee or if Landlord or Landlord's spouse or minor children own more than 10 rental units or if Landlord is not a natural person.*

All interest earned on the above-referenced account shall belong to the Holder. Holder shall have the right to change the bank and/or account number in which the Security Deposit is held upon notice to Landlord and Tenant, provided that the type of account remains the same. Landlord shall have the right upon fourteen (14) days prior to notice to Holder and Tenant to change the Holder of the Security Deposit and/or the bank account into which the Security Deposit is deposited; provided that the new Holder is designated by Landlord is a licensed Georgia Real Estate broker, and the bank account into which the Security Deposit is deposited into is an Escrow/Trust Account. Upon receiving such notice, the Tenant and existing Holder shall send written notice to Landlord consenting to the transfer of the Security Deposit.

C. **Security Deposit Check Not Honored:** In the event any Security Deposit check is not honored, for any reason, by the bank upon which it is drawn, Holder shall promptly notify all parties to this lease of the same. Tenant shall have three (3) banking days after notice to deliver good funds to Holder. In the event Tenant does not timely deliver good funds, Landlord shall have the right to terminate this lease upon notice to Tenant.

D. **Return of Security Deposit:** The balance of the Security Deposit shall be returned to Tenant by Holder within thirty (30) days after the termination of this lease or the surrender of Property by Tenant and acceptance of the Property by Landlord, whichever occurs last (hereinafter "Due Date"); provided that Tenant meets the following requirements: (1) (a)the full term of the lease has expired; (b)Tenant has given a 45 day written notice to vacate in accordance with Paragraph 28(A) of this lease; or (c) the month-to-month tenancy has been terminated in accordance with Georgia law; (2) the entire Property is clean and free of dirt, trash and debris; (3) all rent, additional rent, fees and charges have been paid in full; (4) there is no damage to the Property except for normal wear and tear or damage noted at the commencement of the lease in the Move In Move Out Inspection Form signed by Landlord and Tenant; and (5) all keys, access cards, gate openers and garage openers, if any, have been returned to Landlord/Manager.

E. **Deductions from Security Deposit:** Holder shall have the right to deduct from the Security Deposit: (1) the cost of repairing any damage to Property other than normal wear and tear caused by Tenant, Tenant's household or their invitees, licensees and guests; (2) unpaid rent, utility charges or pet fees; (3) cleaning costs if the Property is left unclean; (4) the cost to remove and dispose of any personal property of Tenant upon termination of the lease; (5) late fees and any other unpaid fees, costs and charges incurred by Landlord in connection with a delinquency by Tenant or referenced herein; and (6) a fee of $200.00 to rekey the locks either at the request of Tenant or upon the termination of the lease.

F. **Move-Out Statement:** Holder shall provide Tenant with a statement ("Move-Out Statement") listing the exact reasons for the retention of the Security Deposit or for any deductions there from. If the reason for the retention is based upon damages to Property such damages shall be specifically listed in the Move-Out Statement. The Move-Out Statement shall be prepared within three (3) business days after the termination of occupancy. If Tenant terminates occupancy without notifying the Holder, Holder may make a final inspection within a reasonable time after discovering the termination of occupancy. Tenant shall have the right to inspect Property within five (5) business days after termination of occupancy in order to ascertain the accuracy of the Move-Out Statement. If Tenant agrees with the Move-Out Statement, Tenant shall sign the same. If Tenant refuses to sign the Move-Out Statement, Tenant shall

specify in writing, the items on the Move-Out Statement with which Tenant disagrees and sign such writing within three (3) business days.

G. **Delivery of Move-Out Statement:** Holder shall send the Move-Out Statement, along with balance, if any, of the Security Deposit, before the Due Date. The Move-Out Statement shall be delivered personally to
Tenant or mailed to the last known address of the Tenant via First Class Mail. If the letter containing the payment is returned to Holder undeliverable and if Holder is unable to locate Tenant after a reasonable effort, the payment shall become the property of the Landlord ninety (90) days after the date the payment was mailed.

**11.DELETED**

**12. UTILITIES:**

***A.*** As of the Commencement Date of this lease, Tenant shall pay all connection fees, service fees, usage fees, and all other costs and fees for all utilities to the Property including, but not limited to, electricity, gas, water, wastewater, sewer, garbage, telephone, alarm monitoring systems, cable, fax and Internet connections; except the following which Landlord will pay: **n/a**
Unless otherwise agreed, amounts under this paragraph are payable directly to the service providers. Failure by Tenant to comply with the provisions contained herein may result in a chargeback to Tenant for usage and/or disconnection fees incurred by Landlord or Landlord's Broker.

**B.** Unless provided by Landlord, Tenant must, at a minimum, keep the following utilities on, if available, at all times this Lease is in effect: gas; electricity; water; wastewater; and garbage services.

**13. MOVE-IN INSPECTION:**

**A.** Landlord makes no express or implied warranties as to the Property's condition. Tenant has inspected the
Property and accepts it **AS-IS**.

**B**. Prior to tendering the Security Deposit, Landlord shall present Tenant with a list of any existing damage to the Property. Tenant shall have the right to inspect the Property to ascertain the accuracy of the list prior to taking possession of the Property. Landlord and Tenant shall sign the list and this shall be conclusive evidence of the accuracy of the list but shall not be conclusive as to latent defects (the "Move-In Statement"). If Tenant refuses to sign the list, Tenant shall state specifically in writing the terms on the list to which he or she dissents and shall sign such writing. The Move-In Statement is not a request for repairs. Tenant must direct all requests for repairs in compliance with Paragraph 15 of this lease.

**14.OWNER'S PROPERTY DISCLOSURE STATEMENT:**

Owner's Property Disclosure Statement ☐ **is or** ☒ **is not attached to this lease.**

**15. TENANT'S RESPOSIBILITIES:**

**A. Repairs and Maintenance:** Tenant acknowledges that Tenant has inspected Property and that it is fit for residential occupancy. Tenant shall promptly notify Landlord of any dangerous condition or need for maintenance existing in Property. Upon receipt of notice from Tenant, Landlord shall, within a reasonable time period thereafter, repair the following: (1) all defects in Property which create unsafe living conditions or render Property untenable; and (2) to the extent required by state law, such other

defects which, if not corrected, will leave Property in a state of disrepair. Except as provided above, Tenant agrees to maintain Property in the neat, sanitary and clean condition free of trash and debris. Any expenses incurred by Landlord to remedy any violations of this provision shall be reimbursed to Landlord by Tenant within thirty (30) days of the receipt of an invoice from Landlord. If Tenant fails to timely pay said invoice Tenant shall be in default of this Lease. Tenant agrees not to authorize any repair service without prior approval of Landlord. Tenant will be responsible for immediate and complete payment to any contractor or service provider who performs work on the Property without the prior notice and approval of Landlord.

1. **<u>Repair Requests</u>: All requests for maintenance or repairs at Property required of Landlord ("Maintenance Request") under this lease must be made by one of the following two methods:**

   a. **Log into your Portal and enter the Maintenance Request; or**
   b. **Call HomeRiver Group Maintenance Request hotline: 855-744-4268 .**

   **Landlord or Manager reserves the right to make changes to the Maintenance Request process.**

2. **In the event of an emergency related to the condition of the Property that materially affects the physical health or safety of an ordinary tenant, call 855-744-4268 . Ordinarily, a repair to the heating and air conditioning system is not an emergency.**

B. **Tenant's General Responsibilities:** Tenant, at Tenant's expense, must:

(1) keep the Property clean and sanitary.
(2) promptly dispose of all garbage in appropriate receptacles.
(3) supply and change heating and air conditioning filters at least once every 90 days.
(4) supply and replace all light bulbs, fluorescent tubes, and batteries for smoke detectors, carbon monoxide detectors, garage door openers, ceiling fan remotes and other devices (of the same type and quality that are in the property on the Commencement Date);
(5) maintain appropriate levels of necessary chemicals or matter in any water softener.
(6) take action to promptly eliminate any dangerous condition on the Property.
(7) take all necessary precautions to prevent broken water pipes due to freezing or other causes.
(8) replace any lost or misplaced keys.
(9) pay any periodic, preventive, or additional extermination costs to insure Property is maintained in a pest free condition (unless othsderwise provided for in this paragraph);
(10) remove any standing water.
(11) know the location and operation of the main water cut-off valve and all electric breakers and how to switch the valve or breakers off at appropriate times to mitigate any potential damage; and
(12) promptly notify Landlord, in writing, of all needed repairs.

C. **Lawn and Exterior Maintenance:** *[Select one. The sections not marked shall not be a part of this lease.]*

☒1. Tenant shall keep the lawn mowed and edged, beds free of weeds, maintain pine straw or mulch,
shrubs trimmed, trash and grass clippings picked up on a regular basis (minimum of once every two weeks in growing season and fall leave season) and shall keep Property, including yard, lot, grounds, Property, walkways and driveway clean and free of rubbish, trash and debris

☐ 2. Partial maintenance by Tenant – Tenant shall maintain the following
☐ 3. Landlord or Landlord's designated agent shall provide all yard/exterior maintenance.
☐ 4. HOA maintains lawncare. ☐ Front only ☐ Back only ☐ Full yard
☐ 5. N/A – No Yard.

**D. Repairs that Tenant will Pay Entirely:** Tenant will pay Landlord or any contractor Landlord directs Tenant to pay the entire cost to repair:
(a) a condition caused by Tenant, an occupant, a member of Tenant's family , or a guest or invitee of Tenant (a failure to timely report an item in need of repair or the failure to properly maintain an item may cause damage for which Tenant may be responsible);
(b) damage from wastewater stoppages caused by foreign or improper objects in lines that exclusively service the Property;
(c) damage to doors, windows, or screens; and
(d) damage from windows or doors left open.

**E. Pest Control:** Landlord will be responsible for termite and rodent control. Other pest control (Including ants, cockroaches, spiders and other insects) shall be handled as set forth below. *[Select one. The sections not marked shall not be a part of this lease.]*
☐ (1) Landlord or Landlord's designated agent shall provide pest control services to Property.
☒ (2) Landlord shall not provide pest control services to Property and the same shall be the responsibility
of Tenant.

**F. Smoke Detectors:** Tenant acknowledges that Property is equipped with a smoke detector(s) that is in good working order and repair. Tenant agrees to be solely responsible to check the smoke detector every thirty (30) days and notify Landlord immediately if the smoke detector is not functioning properly.

**G. Freezing of Pipes:** To help in preventing the freezing of pipes, Tenant agrees that when the temperature outside falls below 32 F, Tenant shall: (a) leave the thermostat regulating the heat serving the Property in an "on" position and set to a minimum of 60 F, and (b) leave the faucets dripping.

**H. Mold and Mildew:** Tenant acknowledges that mold and/or mildew can grow in any portion of the Property that are exposed to elevated levels of moisture and that some forms of mold and mildew can be harmful to human health. Tenant therefore agrees to regularly inspect the Property for mold and/or mildew and immediately report to Landlord any water intrusion problems mold and/or mildew (other than sinks, showers, toilets and other areas designed to hold water or to be wet areas). Tenant shall not block or cover any heating, ventilation, or air conditioning ducts located in the Property.

**I. Access Codes:** Landlord shall provide Tenant with all access codes as applicable, to entrance gates and security systems located on the Property.

**J. Pool/Spa Maintenance:** Any pool or spa on the Property will be maintained by Tenant according to a Pool/Spa Maintenance Addendum.

## 16. LEAD BASED PAINT

For any Property built prior to 1978, Tenant acknowledges that Tenant has received, read, and signed the Lead-Based Paint Exhibit attached hereto and incorporated herein by reference. Any approved painting or other alterations by Tenant that disturb lead-based paint shall be performed in accordance with the EPA's Renovate Right brochure (http://www.epa.gov/lead/pubs/renovaterightbrochure.com).

**17. NOTICE OF PROPENSITY OF FLOODING**

Landlord hereby notifies Tenant as follows: Some portion or all of the living space or attachment thereto on Property ☐ has **OR** ☒ has not been flooded at least three times within the last five (5) years immediately preceding the execution of this lease. Flooding is defined as the inundation of a portion of the living space caused by an increased water level in an established water source such as a river, stream, or drainage ditch, or as a ponding of water at or near the point of heavy or excessive rain fall.

**18. SUBLET AND ASSIGNMENT**

Tenant may not sublet Property in whole or in part or assign this lease without the prior written consent of Landlord and Manager. This lease shall create the relationship of Landlord and Tenant between the parties hereto; no estate shall pass out of Landlord. Tenant has only a usufruct, not subject to levy and sale.

**19. USE**

Property shall be used for residential purposes only and shall be occupied only by the *3* persons listed as follows: *Christopher Ross with 2 minors (Kennedy Ross 10/10/2014; Cj Ross 02/02/2023).* Property shall be used by Tenant and all occupants, guests, licensees, contractors in accordance with all federal, state, county, and municipal laws and ordinances and any applicable declaration of condominium, declaration of covenants, conditions, and restrictions; all rules and regulations adopted pursuant thereto; and any community association bylaws. Tenant agrees any violation or noncompliance of the above resulting in fines being imposed against Landlord shall be the financial responsibility of and immediately paid by Tenant.

**20. NUISANCES AND UNLAWFUL ACTIVITY**

Tenant shall be responsible for ensuring that Tenant and members of Tenant's household and their invitees, licensees and guests comply with the Rules and Regulations applicable to Tenant set forth herein and any term, condition or provision of this lease relating to the use of the Property and do not engage in any activity while on Property that is unlawful, would endanger the health and safety of others or would otherwise create a nuisance. In the event Tenant or any of the above-named parties are arrested or indicted for an unlawful activity occurring on Property and said charges are not dismissed within thirty (30) days thereafter, Tenant shall be deemed to be in default of this lease and Landlord may terminate this lease immediately. For the purpose of this lease, an unlawful activity shall be deemed to be any activity in violation of local, state or federal law.

**21. PROPERTY LOSS AND ABANDONMENT**

**A.** Storage of personal property by Tenant in Property or in any other portion of Property shall be at Tenant's risk. Tenant has been advised to obtain renter's insurance that provides comprehensive property insurance for Tenant's property that insures against any loss due to but not limited to leaking pipes, theft, vandalism, fire, windstorms, hail, flooding, rain, lightning, tornados, hurricanes, water leakage, snow ice, running water or overflow of water or sewage. Landlord shall not be liable for any injury or damage caused by such occurrences, and Tenant agrees to look solely to their insurance carrier for reimbursement of losses for such events.

**B.** If Tenant removes Tenant's furniture and personal belongings from the Property other than in the usual course of continuing occupancy, without having first paid Landlord all monies due under this lease, the Property may be considered abandoned, and Landlord shall have the right, without notice, to store or dispose of any personal property left on the Property by Tenant. Landlord shall also have the right to store or dispose of any of Tenant's property remaining on the Property after the termination of this lease. Tenant shall be responsible for all costs to remove and store items.

**22. RIGHT OF ACCESS, SIGNAGE**

Upon 24 hours advance notice to Tenant, Landlord shall have the right Monday through Saturday from 9:00 a.m. to 8:00 p.m. to access the Property or Property to inspect, repair, and maintain the same and/or to show the Property to prospective tenants and buyers. In addition, Landlord may enter the Property at any time to investigate potential emergencies. Evidence of water leaks, fire, smoke, foul odors, sounds indicating the possibility of an injured person or animal and other similar evidence of an emergency shall be sufficient grounds for Landlord to enter Property for this purpose. During the last 45 days of the term of the lease, and during any period when Property is being leased month to month, Landlord may place a "for rent" or "for sale" sign in the yard or on the exterior of any dwelling on Property, may install a lockbox and may show Property to prospective tenants or purchasers during reasonable hours. Tenant agrees to cooperate with Landlord and Manager who may show Property to prospective tenants or buyers. In the event a lockbox is installed, Tenant shall secure jewelry and other valuables and agrees to hold Landlord harmless for any loss thereof. For each occasion when the access rights described above are denied, Tenant shall pay Landlord the sum of $*60.00* as liquidated damages; it being acknowledged that Landlord shall be damaged by the denial of access, that Landlord's actual damages are hard to estimate, and that the above amount represents a reasonable pre-estimate of Landlord's damages rather than a penalty.

**23. RULES AND REGULATIONS**

**A.** Tenant is prohibited from adding, changing or in any way altering locks installed on the doors of Property without prior written permission of Landlord. If all keys to Property and Property are not returned when Tenant vacates Property, Landlord may charge a re-key charge in the amount of $*200.00.*
**B.** Motor vehicles with expired or missing license plates, non-operative vehicles, motor vehicles leaking oil, boats, trailers, RVs and campers are not permitted on Property. Any such vehicle may be removed by Landlord at the expense of Tenant for storage or for public or private sale, at Landlord's option, and Tenant shall have no right or recourse against Landlord thereafter.
**C.** Other than normal household goods in quantities reasonably expected in normal household use, no goods or materials of any kind or description which are combustible would increase fire risk or increase risk of other casualties shall be kept in or placed on Property.
**D.** Tenant is prohibited from making holes in the woodwork, floors, or walls, except that a reasonable number of small nails may be used to hang pictures in sheetrock and grooves in paneling.
**E.** No pets are allowed unless the exhibit entitled "Pet Exhibit" is attached to this lease
**F.** Tenant shall not, on or in Property, improperly dispose of motor oil, paints, paint thinners, gasoline, kerosene or any other product which can cause environmental contamination on or in Property.
**G.** No waterbeds are allowed in Property without written consent of Landlord
**H.** No space heaters or window air conditioning units shall be used to heat or cool Property except with the written consent of Landlord.
**I.** No window treatments currently existing on windows shall be removed or replaced by Tenant without prior written consent of Landlord.
**J.** Tenant shall comply with all posted rules and regulations governing the use of any recreational facilities, if any, located on Property.

**K.** Tenant shall comply with all posted Rules and Regulations governing the parking of motor vehicles on Property or the use of driveways, sidewalks and streets on Property.

**L.** Tenant shall only skateboard, skate, rollerblade or bicycle on paved portions of the Property and while wearing proper safety equipment.

**M.** Any location and means of installation and repair and/or maintenance of any telephone, cable TV, satellite, Internet or data wiring and/or systems are the sole responsibility of Tenant, but must be approved, in advance, by Landlord. Landlord does not warrant and shall not be responsible for any portion of any telephone, cable TV, satellite, Internet, data wiring and/or systems serving Property.

**N.** Tenant shall be prohibited from improving, altering or modifying the Property (including painting) during the term of this lease without the prior written approval of the Landlord. Any improvements, alterations or
modifications approved by Landlord shall be deemed to be for the sole benefit of Tenant and Tenant expressly waives all rights to recover the cost or value of the same. Any improvements, alterations or modifications of the Property made by Tenant without the approval of Landlord shall be deemed to be damage done to the Property by Tenant.

**O.** Tenant shall keep all utilities serving the Property on at all times during the term of the lease, including but not limited to garbage, water, electric, and gas.

**P.** Permit any water furniture on the Property.

**Q.** Unless otherwise authorized by this lease, Tenant may not install or permit any of the following on the Property, even temporarily: a spa, hot tub, above ground pool, trampoline, or any item which causes a suspension or cancellation of insurance coverage or an increase in insurance premiums.

**24. DEFAULT**

**A. Default Generally:** Tenant shall be in default of this lease upon the occurrence of any of the following:

1. Tenant violates any of the Rules and Regulations or Tenant's responsibilities set forth herein or otherwise
fails to abide by the terms and conditions of this lease. Prior to terminating the lease for any of the above-referenced reasons Landlord shall give Tenant notice of the default and a one (1) day opportunity to cure the same except in situations where the default is incapable of being cured within that time frame
or the nature of the Tenant's default, if not cured, poses a risk of damage or injury to Landlord, Landlord's Property or other persons or property, as determined in the sole discretion of Landlord.
2. Tenant violates any of the Rules and Regulations or Tenant's responsibilities set forth herein or other terms and conditions of the lease of total of three (3) or more times during the term of the lease regardless of whether such violations are cured.
3. Tenant files a petition in bankruptcy.
4. Tenant fails to timely pay rent or other amounts owed to Landlord under this lease.
5. Tenant fails to reimburse Landlord for any fees, costs, and charges incurred by Landlord in connection with a delinquency by Tenant, damages, repairs and costs to the Property or Property (other than normal wear and tear and items identified in the Move-In Move-Out Inspection Form signed by the Landlord and Tenant at the commencement of the lease) caused by the actions or neglect of Tenant or members of Tenant's household and their invitees, licensees and guests.

**B. Effect of Default:** If Tenant defaults under any term, condition or provision of this lease, Landlord shall have the right to terminate this lease by giving notice to Tenant and pursue all available legal and equitable remedies to remedy the details. Upon a Tenant default, Tenant shall remain fully liable to pay all rent, fees and other charges through the earlier of either: (a) the end of the lease term; or (b) the date that the Property is re-rented and the tenant under the new lease takes occupancy and pays all initial amounts owed under the Lease. All rights and remedies available to Landlord by law or in this lease shall be cumulative and concurrent.

**25.DESTRUCTION OF PROPERTY**

**A.** If flood, fire, storm, mold, other environmental hazards that pose a risk to the occupants' health, other casualty or Act of God shall destroy (or so substantially damage as to be uninhabitable) Property, rent shall abate from the date of such destruction. Landlord or Tenant may, by written notice, within thirty (30) days of such destruction, terminate this lease, whereupon rent and all other obligations hereunder shall be adjusted between the parties as of the date of such destruction.

**B.** If Property is damaged but not rendered wholly untenable by flood, fire, storm, or other casualty or Act of God, rent shall abate in proportion to the percentage of Property which has been damaged and Landlord shall restore Property as soon as is reasonably practicable whereupon full rent shall commence.

**C.** Rent shall not abate nor shall Tenant be entitled to terminate this lease if the damage or destruction of Property, whether total or partial, is the result of the negligence or willful misconduct of Tenant or Tenant's household or their invitees, licensees, or guests.

**26. MORTGAGEE'S RIGHTS**

Tenant's rights under this lease shall at all times be automatically junior and subordinate to any deed to secure debt which is now or shall hereafter be placed on Property. If requested, Tenant shall execute promptly any certificate or agreement that Landlord may request to effectuate the above.

**27. DISCLAIMER**

**A. Neighborhood Conditions:** Tenant acknowledges that in every neighborhood there are conditions which different tenants may find objectionable. It shall be Tenant's duty to become acquainted with any present or
future neighborhood conditions which could affect the Property including without limitation land-fills, quarries, high-voltage power lines, cemeteries, airports, stadiums, odor producing factories, crime, schools serving the Property, political jurisdictional maps and land use and transportation maps and plan. If Tenant is concerned about the possibility of a registered sex offender residing in a neighborhood in which Tenant is
interested, Tenant should review the Georgia Violent Sex Offender Registry available on the Georgia Bureau of Investigation Website at www.gbi.georgia.gov.

**28. EARLY TERMINATION BY TENANT** [*Select A or B below. The section not marked shall not be a part of this lease.]*

☒ **A. Right to Terminate Early:** Tenant(s) in good standing (those who are in compliance with all terms and conditions as provided for in the lease) shall have the option to terminate this lease prior to the end of the term or during any future renewal by providing the Landlord a minimum of **sixty (60)** days written notice ("Notice") which must provide the last date of occupancy. Tenant must pay all Monthly Rent and applicable utilities due during such Notice period. Additionally, Tenant must pay an early termination fee to Landlord of **two (2)** month's rent at the time the Notice is provided ("Early Termination Fee"). Early Termination Fee shall be deemed liquidated damages to the Landlord as a result of Tenant's early termination of the lease. Rent will be prorated on a daily basis through the revised end of term. Tenant is required to conform to all other terms of the lease or this early termination option will be forfeited and the Tenant will be responsible for the full amount of rent as provided for in the lease. Failure of Tenant to comply with the provisions contained herein shall allow Landlord to recover against Tenant any and all amounts recoverable under applicable state law.

☐ **B. No Right of Early Termination:** Tenant shall not have the right to terminate this lease early.

**C. Military Activation:** If Tenant is or becomes a servicemember or a dependent of a servicemember

of the United States armed forces on active duty and receives permanent change of station (PCS) orders and Tenant is not in default of this lease, Tenant may terminate this lease by giving Landlord: (1) a certified copy of the orders; and (2 written notice of termination of not less than the number of days Tenant must give to Landlord for termination under Paragraph 5A. This paragraph does not apply to orders: (1) authorizing base housing or post housing; (2) for deployment; or (3) changing permanent stations which are located in the same county.

D. **Holding Over:** Tenant shall have no right to remain in the Property after the termination or expiration of this lease. Should Tenant fail to vacate the Property upon the expiration or termination of this lease, Tenant shall pay Landlord a per diem occupancy fee of *$138.00* for every day that Tenant holds over after the expiration or termination of this lease. Acceptance of the occupancy fee by Landlord shall in no way limit Landlord's right to treat Tenant as a tenant at sufferance for unlawfully holding over and to dispossess Tenant for the same.

**29. OTHER PROVISIONS**

**A. Time of Essence:** Time is of the essence of this lease.

**B. No Waiver:** Any failure of Landlord to insist upon the strict and prompt performance of any covenants or conditions of this lease or any of the rules and regulations set forth herein shall not operate as a waiver of any such violation or of Landlord's right to insist on prompt compliance in the future of such covenant or condition, and shall not prevent a subsequent action by Landlord for any such violation. No provision, covenant or condition of this lease may be waived by Landlord unless such waiver is in writing and signed by Landlord.

**C. Definitions:** Unless otherwise specifically noted, the term "Landlord" as used in this lease shall include its representatives, heirs, agents, assigns, and successors in title to Property and the term "Tenant" shall include Tenant's heirs and representatives. The terms "Landlord" and "Tenant" shall include singular and plural, and corporations or individuals, as may fit in particular circumstances. The term "Binding Agreement Date" shall mean the date that this lease has been signed by the Tenant and Landlord and a fully signed and executed copy thereof has been returned to the party making the offer to lease. For all purposes herein, a banking day shall not include Saturday, Sunday or Federal Holidays.

D. **Joint and Several Obligations:** The obligations of Tenant set forth herein shall be the joint and several obligations of all persons occupying the Property.

**E. Entire Agreement:** This lease and any attached addenda and exhibits thereto shall constitute the entire agreement between the parties and no verbal statement, promise, inducement or amendment not reduced to writing and signed by both parties shall be binding.

**F. Attorney's Fees, Court Costs and Costs of Collection:** Whenever any monies due hereunder are collected by law or by attorney at law to prosecute such an action, Landlord will be entitled to reasonable attorney's fees equal to fifteen (15%) of the amount due under this lease, plus all court costs and costs of collection.

**G. INDEMNIFICATION: TENANT AGREES TO INDEMNIFY AND HOLD LANDLORD AND MANAGER HARMLESS FROM AND AGAINST ANY AND ALL INJURIES, DAMAGES, LOSSES, SUITS AND CLAIMS AGAINST LANDLORD AND/OR MANAGER ARISING OUT OF OR RELATED TO:**

**(1) TENANT'S FAILURE TO FULFILL ANY CONDITION OF THIS LEASE;**

**(2) ANY DAMAGE OR INJURY HAPPENING IN OR TO THE PROPERTY AND THE PROPERTY OR TO ANY IMPROVEMENTS THEREON AS A RESULT OF THE ACTS OR OMISSIONS OF TENANT OR TENANT'S FAMILY MEMBERS, INVITEES OR LICENSEES;**

**(3) TENANT'S FAILURE TO COMPLY WITH ANY REQUIREMENTS IMPOSED BY ANY GOVERNMENTAL AUTHORITY;**

**(4) ANY JUDGMENT, LIEN OR OTHER ENCUMBRANCE FILED AGAINST PROPERTY AS A RESULT OF TENANT'S ACTIONS AND ANY DAMAGE OR INJURY**

**HAPPENING IN OR ABOUT PROPERTY TO TENANT OR TENANT'S FAMILY MEMBERS, INVITEES OR LICENSEES (EXCEPT IF SUCH DAMAGE OR INJURY IS CAUSED BY THE INTENTIONAL WRONGFUL ACTS OF LANDLORD OR MANAGER);**

**(5) FAILURE TO MAINTAIN OR REPAIR EQUIPMENT OR FIXTURES, WHERE LANDLORD AND/OR MANAGER USE THEIR BEST EFFORTS TO MAKE THE NECESSARY REPAIRS WITHIN A REASONABLE TIME PERIOD AND TENANT COVENANTS NOT TO SUE LANDLORD OR MANAGER WITH RESPECT TO ANY OF THE ABOVE-REFERENCED MATTERS.**

**(6) IN ADDITION TO THE ABOVE, TENANT AGREES TO HOLD MANAGER HARMLESS FROM AND AGAINST LANDLORD OF THE PROPERTY NOT PAYING OR KEEPING CURRENT WITH ANY MORTGAGE, PROPERTY TAXES OR HOME OWNERS ASSOCIATION FEE'S ON THE PROPERTY OR NOT FULFILLING THE LANDLORD'S OBLIGATIONS UNDER THIS LEASE. FOR THE PURPOSE OF THIS PARAGRAPH, THE TERM "MANAGER" SHALL INCLUDE MANAGER AND MANAGER'S AFFILIATED LICENSEES, EMPLOYEES AND IF MANAGER IS A LICENSED REAL ESTATE BROKERAGE FIRM, THEN OFFICERS, DIRECTORS AND OWNERS OF SAID FIRM.**

**H. Notices:** All notices and all other communications under this Lease must be in writing and are effective when entered into the HomeRiver Group Portal, hand-delivered or sent by U.S. Mail to the following addresses for each respective party:

| | |
|---|---|
| Tenant at the Property | Landlord c/o:<br>**<u>1719 Route 10</u>**<br>**<u>Suite 219</u>**<br>**<u>Parsippany, NJ 07054</u>**<br>Phone: 855-744-4268 |

**Appliances and Items that will NOT be Repaired:** Appliances and items furnished or installed by Tenant at Property will not be repaired or replaced by Landlord.

**I. Keys:** Landlord may release keys to or open Property to any of the occupants listed herein.

**J. Wavier of Homestead Rights:** Tenant for himself and his family waives all exemptions or benefits under the homestead laws of Georgia.

**K. Governing Law:** This lease may be signed in multiple counterparts and shall be governed by and interpreted pursuant to the laws of the State of Georgia. This lease is not intended to create an estate for years on the part of Tenant or to transfer to Tenant any ownership interest in the Property.

L. **Security Disclaimer:** Tenant acknowledges that: (1) crime can occur in any neighborhood including the neighborhood in which Property is located; and (2) while Landlord may from time to time do things to make Property reasonably safe, Landlord is not a provider or guarantor of security in or around Property. Tenant acknowledges that prior to occupying Property, Tenant carefully inspected all windows and doors
(including locks for the same) and all exterior lighting and found these items: (a) to be in good working order and repair; and (b) reasonably safe for Tenant and Tenant's household and their invitees, licensees
and guests knowing the risk of crime. If during the term of the lease any of the above items become broken or fall into disrepair, Tenant shall give notice to the Landlord of the same immediately.

M. **Rental Application:** Tenant's rental application is ☐, **OR,** is not ☒ attached hereto as exhibit. If the rental application is attached hereto and it is later discovered that the information disclosed therein by Tenant was

incomplete or inaccurate at the time it was given, Tenant shall be in default of this lease and Landlord may pursue any and all of the Landlord's remedies regarding said default.

**N. Authorized Agent Disclosure:** The name and address of the Landlord of record of the Property or the person authorized to act for and on behalf of the Landlord for the purpose of serving or process and receiving demands and notices is as follows:

**Corporation Service Company**
**2 SUN COURT, SUITE 400**
**PEACHTREE CORNERS, GA, 30092**

**O. Manager:** The name and address of the person authorized to manage the Property is as follows:

**HomeRiver Group**
**1719 Route 10 Suite 219**
**Parsippany, NJ 07054**

(defined as "Manager" within this lease). If no Manager is listed above, the Landlord shall be deemed to be self-managing the Property. If Manager is listed as the Landlord hereunder, Manager shall have full authority to act as the Landlord for all purposes hereunder. Manager shall have no rights, duties, obligations or liabilities great than what is set forth in the Management Agreement between Landlord and Manager.

**30. PETS:**

**A.** Unless the parties agree otherwise in writing, Tenant may not permit, even temporarily, any pet on the Property (including but not limited to any mammal, reptile, bird, fish, rodent, or insect).

**B.** If Tenant violates Paragraph 30 or any agreement to keep a pet on the Property, Landlord may take all or any of the following actions:
(1) declare Tenant to be in default of this lease and exercise Landlord's remedies under Paragraph 24;
(2) charge Tenant, as additional rent, an initial amount of $60.00 and $25.00 per day thereafter per pet for each day Tenant violates the pet restrictions;
(3) charge to Tenant the Landlord's cost to:
(a) remove any unauthorized pet;
(b) exterminate the Property for fleas and other insects;
(c) clean and deodorize the Property's carpets and drapes; and
(d) repair any damage to the Property caused by the unauthorized pet.

**C.** When taking any action under Paragraph 30B Landlord will not be liable for any harm, injury, death, or sickness to any pet.

**31. EXHIBITS**

All exhibits attached hereto listed below or referenced herein are made a part of this lease. If any such exhibit conflicts with any preceding paragraph, said exhibit shall control:

- ☐ Exhibit Regarding Lead-Based Paint
- ☐ Pet Agreement
- ☐ Protecting Your Home from Mold
- ☐ Surety Bond or Security Deposit Waiver Addendum
- ☒ Resident Benefit Package Addendum
- ☐ Pool/Spa Maintenance Addendum
- ☐ Residential lease Guarantor
- ☒ Site Unseen Addendum
- ☒ Utility Addendum

☐ Service Animal Agreement
☐ Concession Addendum
☒ Internet Service Lease Addendum
☐ Housing Assistance Addendum
☐ Dwellworks Addendum
☐ ________

## 32. SPECIAL STIPULATIONS

The following Special Stipulations, if conflicting with any exhibit or proceeding paragraph, shall control:

1. Smoking ☐ is ☒ is not allowed inside the property
2. Tenant agrees to have the carpets professionally cleaned. If carpets are not professionally cleaned, then tenant agrees to pay Landlord's assessed cost for cleaning. Further, all holes in walls or ceilings caused by tenant will be properly filled and painted to match existing surface.
3. To the extent allowed by law, Tenant will be charged a Posting Fee ($24-$70 depending on type of posting) for the delivery of a Three-Day Notice.
4. *n/a*

## 33. INSURANCE

CR KE

Tenant agrees to carry a Renter's Insurance Policy ("Renter's Insurance") with liability coverage in an amount not less than One Hundred Thousand Dollars ($100,000) ("Liability Coverage"). All personal property located on or stored in the Property shall be kept and stored at Tenant's sole risk and Tenant shall indemnify and hold harmless Landlord and Landlord's Broker from and against any loss or damage to such property arising from any cause whatsoever. Landlord recommends that Tenant obtain personal property coverage in an amount adequate to cover Tenant's personal property. Tenant must provide a Certificate of Insurance ("Certificate") evidencing the Liability Coverage and naming Landlord as an additional interest covered by the Renter's Insurance policy at the time Tenant executes the lease. Such coverage shall be maintained at all times during the initial lease term contained herein as well as all lease renewals and extensions. Tenant's failure to maintain Renter's Insurance and provide a Certificate shall constitute a breach of this Lease at the election of the Landlord, which may result in termination of this Lease by Landlord as well as termination of Tenant's right of possession to the Property. If this Lease is so terminated by Landlord, Tenant may be subject to charges, damages, attorney's fees and costs, eviction and any other rights and remedies available to Landlord under state law.

## 34. LITIGATION AND LIMITATION OF ACTIONS

In the event of a dispute concerning this tenancy or anything arising out of or created by this lease agreement ("Legal Dispute"), Tenant agrees that if the Premises are being managed by an agent for the Landlord, Tenant shall hold agent, it's parents, subsidiaries, affiliates, employees, independent contractors, representatives, shareholders, insurers, successors and assigns, harmless from any liability (including: claims, suits, damages, costs, attorney's fees, losses, fees, penalties, fines and expenses of any kind arising out of or relating to this lease agreement) and shall look solely to the Landlord in the event of such Legal Dispute. Additionally, and to the extent allowed by law, Tenant also agrees and understands that any legal action against Manager or Owner must be instituted within one year of the date any claim or cause of action arises and that any action filed after one year from such date shall be time barred as a matter of law.

| | | | |
|---|---|---|---|
| ______________________ | | Christopher Ross | 06/02/2026 11:43 |
| Landlord | Date | Tenant | Date |
| Or signed for Landlord under written property management Agreement: | | Tenant | Date |
| Kelly Espinoza | 06/02/2026 16:42 | | |

Tenant Date

Printed Name: Kelly Espinoza
On Behalf Of:
Firm Name: __HomeRiver Group_______________ Tenant Date

## Resident Benefits Package Lease Addendum

The HomeRiver Group Resident Benefits Package ("RBP") is effective as of the commencement date of the Lease and agreed upon between the Tenant and the Landlord. The RBP provides the terms and conditions of the HomeRiver Group Resident Benefits Package that delivers savings and convenient, professional services that make taking care of your home second nature at a cost of **$49.95/month** ("RBP Fee"), payable with your rent. The RBP includes all services listed below and the RBP Fee will not be adjusted due to discontinuation or unavailability of any element or services of the RBP, unless otherwise specified below.

Tenant and Landlord mutually agree that the RBP is defined based on the listed services below and any applicable elections. Tenant acknowledges and agrees that (1) all services listed below are part of the RBP and shall be effective for the term of the Lease, and (2) shall terminate only upon termination of the Lease.

**Move-in Concierge Service:** The RBP shall include a concierge service to Tenant to aid in utility, cable, internet, and other relevant service(s) activation (collectively, the "Move-in Services"). Tenant acknowledges that the concierge service provided herein does not guarantee connectivity, account setup, rates, fees, and availability of the Move-in Services, and that all Move-in Services are subject to the approval of the Tenant by the third parties providing such services. Tenant maintains the right at any time to facilitate Tenant's own activations of the Move-in Services, and such action by Tenant shall not reduce or modify the RBP Fee. Tenant agrees to abide by all applicable Lease terms and conditions applicable to the Move-in Services.

**$1M Identity Fraud Protection**: Tenant has elected to be automatically enrolled in Identity Protection and agrees to Aura's Terms of Service and Privacy Policy with respect to the identity theft protection service provided as part of the RBP, which can be found at www.aura.com.

**Resident Rewards:** The RBP shall include access to a resident rewards program ("Rewards") designed for use by the Tenant. Rewards are solely accessible online and are activated, and used, at Tenant's sole discretion through use of a mobile application provided by the Rewards provider. The Rewards shall be subject to Tenant's acceptance of the Rewards provider terms of use. Tenant acknowledges and agrees that the inaccessibility of the Rewards for a period of less than thirty-one (31) days shall not cause a reduction or modification to the RBP Fee.

**Credit Building:** Tenant agrees to credit bureau reporting of rental payment history through a third-party service provider. For any disputes, and/or corrections, Tenant acknowledges and agrees to seek resolution first with the third-party credit data provider. Tenant acknowledges and agrees that the inaccurate reporting, or lack of reporting, shall not cause a reduction or modification to the RBP Fee.

**HVAC Filter Delivery:** The RBP shall include the provision and delivery of HVAC filters for the Tenant's home approximately every 90 days. Tenant shall be solely responsible for the proper installation of the filter that is provided within two (2) days of receipt. Tenant hereby acknowledges that the filters will be dated and subject to inspection by the Landlord upon reasonable notice to verify replacement has been timely made. If at any time Tenant is unable to properly or timely install a filter, Tenant shall immediately notify the Landlord in writing. Due to potential damage caused to the HVAC system from failure to properly and timely replace the filter, Tenant's failure to properly and timely replace the filters shall be considered a material breach of the Lease and Landlord shall be entitled to exercise all rights and remedies it has against Tenant and Tenant

shall be liable to Landlord for all damages to the property or HVAC system caused by Tenant's neglect or misuse. If at any time Tenant is unable to properly or timely install a filter, Tenant may notify Landlord in writing and Landlord shall arrange for installation and may charge a trip fee, or other fee, to Tenant to perform the filter change. Tenant acknowledges that if the property does not have an HVAC system, there will be no filter(s) provided and the RBP Fee will be adjusted accordingly. Tenant acknowledges and agrees that the delayed receipt of HVAC filters, or inaccuracy of shipment, shall not cause a reduction or modification to the RBP or any fees due hereunder.

**Liability Insurance Requirements & Program:** The Landlord requires the Tenant obtain liability coverage of at least $100,000 in property damage and liability coverage from an A-rated carrier and to maintain such coverage throughout the entire term of the Lease. Tenant is required to furnish Landlord evidence of the required insurance prior to occupancy, at the time of each lease renewal period, and upon request.

To satisfy the insurance requirement, Tenant may either (1) be automatically enrolled into the Master Policy as specified in option 1 below to satisfy the coverage requirements as part of the RBP; or (2) obtain alternative liability coverage from an insurer of Tenant's choice that meets the requirements set by the Landlord herein. The option Tenant chooses shall not affect the terms of Tenant's Lease. Please see the options 1 and 2 below:

**Option 1: Master Policy (Automatic Enrollment)**: If the Tenant does not provide evidence of the required insurance coverage by the Lease commencement date, Tenant shall be automatically enrolled into an insurance policy as part of the RBP. Coverage will begin on the effective date of Tenant's lease and continue throughout the term of the Lease. Please refer to the evidence of insurance that is supplied by HomeRiver Group for additional coverage details. The monthly premium for the elected insurance policy of **$10.95** is included in the RBP Fee.

**Option 2: Tenant Policy (Policy Verification Required)**: Tenant has elected to find, purchase, and maintain Tenant's policy that satisfies the Landlord's coverage requirements. Tenant must provide evidence of the required insurance coverage on or before the Lease commencement date. The RBP Fee will be adjusted accordingly. Visit **http://insurance.residentforms.com** and follow the instructions listed there to provide evidence of the required insurance coverage to your Landlord.

Please be sure that your policy meets the following criteria prior to submitting:

- Policy is purchased from an A-rated carrier
- Policy meets or exceeds the required **$100,000** in property damage and personal liability
- **HomeRiver Group** is listed as additional interest
- HomeRiver Group address is listed as: PO Box 660121 Dallas, TX 75266

It is Tenant's sole responsibility to timely pay premiums directly to the Tenant's insurance provider to avoid cancellation of coverage. If the policy is canceled or lapses at any time during the term of the Lease, Tenant shall be subject to a lease violation fee of **$25** and agrees to be subsequently enrolled into the policy referenced in Option 1 above.

**Home Buying Assistance:** Tenant acknowledges that Landlord is a Licensed Real Estate Agent and/or Broker and offers buyer representation services and referrals to Tenants enrolled in the RBP for the purchase of real property. Compensation and detail of such services shall be agreed upon in a separate agreement outside of this Lease.

**24-Hour Maintenance Coordination Service:** Landlord shall allow access to Tenant to report maintenance concerns outside of normal business hours via the online Tenant portal, or other such means as made available by Landlord.

**Online Portal Access:** Landlord agrees to provide Tenant online portal access for the purposes of reviewing pertinent documents, payment of Rent and other fee(s), and reporting maintenance concerns. Landlord reserves the right to restrict payment access to Tenant, at Landlord's sole discretion, should a pattern of delinquency arise and/or persist.

**Multiple Payment Methods:** All rental payments can be paid using a variety of methods available under the Tenant's portal. Available methods include ACH, debit and credit cards, along with participating retailers (as applicable). Restrictions of payment methods by the Landlord are permissible should a pattern of delinquency arise and/or persist. Any applicable fees associated with payments methods are at the Tenant's expense.

**RBP Vendors:** HomeRiver Group may have business relationships or affiliations with vendors and suppliers of RBP services or products provided herein and may receive financial or other benefits from that relationship or affiliation. HomeRiver Group will ensure all third-party vendors are licensed, bonded, and insured, if applicable.

**Data Privacy Consent:** Tenant hereby consents to the collection, use and transfer, in electronic or other form, of the Tenant's personally identifiable information, including sensitive information, to include, but not limited to, Tenant's name, address, telephone number (home, work and mobile numbers), date of birth, driver's license number, social security number, banking and other financial information, including credit card numbers (collectively, the "Tenant Data") by the Landlord, and its service providers, subcontractors, and agents (individually or collectively, the "RBP Provider(s)") for the exclusive purpose of implementing, managing, and performing the RBP. The Tenant understands that Tenant Data may be transferred to any RBP Provider implementing, managing, and performing the RBP, now or in the future. The Tenant authorizes the RBP Providers to receive, possess, use, retain and transfer the Tenant Data, in electronic or other form, for the exclusive purpose of implementing, managing, and performing the RBP. The Tenant understands that Tenant Data will be held by the RBP Providers only as long as is necessary or appropriate for implementing, managing, and performing the RBP. Further, the Tenant understands that the Tenant is providing the consents herein on a purely voluntary basis. Landlord represents and warrants that it shall comply with applicable data protection laws, including implementing appropriate technical and organizational measures which meet the requirements of applicable data protection laws.

**Consent to Receive SMS Messages**: Tenant consents to receive SMS messages (including text messages), and telephone calls (including prerecorded and artificial voice and autodialed) from the Landlord and the RBP Providers at the specific number(s) provided to the Landlord, with service-related information, account information or questions, and/or marketing information. The Tenant represents that the Tenant is permitted to receive calls and text messages at the telephone number provided to the Landlord by the Tenant. Standard message and data rates may apply. SMS messaging services may be modified from time to time, for any reason, and without notice, including the right to terminate SMS messaging with or without notice, without liability to the Tenant.

Upon the signature of the Landlord and/or Landlord's agent and the Tenants(s) below, the above-mentioned RBP Lease Addendum shall be considered as part of the Lease and legally binding on all parties.

| | | | |
|---|---|---|---|
| ______________________ | | Christopher Ross | 06/02/2026 11:43 |
| Landlord | Date | Tenant | Date |

Or signed for Landlord under written property management Agreement: Tenant Date

Kelly Espinoza 06/02/2026 16:42

Tenant Date

Printed Name: Kelly Espinoza
On Behalf Of:
Firm Name: __HomeRiver Group_______________ Tenant Date

# Utility Addendum

This Utility Addendum ("**Utility Addendum**"), by and between Landlord and Tenant, is subject to the terms and conditions stated herein, which are incorporated into the Single Family Residence or Condominium Lease (**"Lease"**) of even date herewith:

1. Upon commencement of Lease, Tenant shall promptly contact utility providers for Property to establish and pay all accounts in Tenant's name for applicable utilities as more particularly set forth in the Lease (**"Utility Services"**).

2. If Tenant fails to comply with Utility Services, Landlord may in their sole and absolute discretion, charge Tenant a service fee in the amount of **$40** per month and per utility (**"Utility Service Fee"**) until such time that Tenant has complied with Utility Services.

3. In addition to the payment of Utility Service Fee, Tenant shall be responsible for payment of any late fees and/or disconnect fees due to non-compliance with Utility Services.

4. Utility Service Fee compensates Landlord for Tenant's failure to comply with Utility Services, which includes but is not limited to: (i) charges assessed by a third-party billing provider during the period of such non-compliance, and (ii) administrative costs incurred by Landlord.

5. In the event Utility Services must remain in Landlord's name, Tenant shall receive a monthly utility bill from Conservice and/or Landlord for all utility charges at the Property as provided for in the Lease (**"Utility Bill"**). Utility Bill shall include, but not be limited to: utility taxes, stormwater, surcharges, and other related utility charges. Tenant shall pay a monthly service fee in the amount of **$11.99** (or the maximum amount allowable by law) for administration, billing, overhead and similar expenses and charges (**"Service Fee"**) incurred by Landlord for coordinating payment of the Utility Bill throughout the duration of the Lease. Tenant agrees that Conservice may estimate any and all utilities upon move-out (or at any other time) and such amounts shall be deemed the final Utility Bill.

**<SIGNATURE PAGE FOLLOWS>**

CR KE

| | |
|---|---|
| Landlord | Date |
| Christopher Ross | 06/02/2026 11:43 |
| Tenant | Date |
| Tenant | Date |
| Tenant | Date |
| Tenant | Date |

Or signed for Landlord under written property management agreement:

| | |
|---|---|
| Kelly Espinoza | 06/02/2026 16:42 |
| By: Kelly Espinoza | Date |
| Firm Name: HomeRiver Group | |



CR KE

# Site-Unseen Disclosure

Property Address: **1032 Winterglen Way Austell Cobb County GA 30168-6126** *("Property")*

The undersigned acknowledge that they have not physically visited or inspected Property to determine its condition and suitability prior to signing this lease and hold HomeRiver Groups harmless from all claims (including, but not limited to, claims of negligence) and damages of any kind and in any way relating to or arising out of the matters set forth herein. All lease terms will remain intact after viewing or gaining access to Property.

| | | | |
|---|---|---|---|
| Christopher Ross | 06/02/2026 11:43 | Kelly Espinoza | 06/02/2026 16:42 |
| Tenant | Date | HomeRiver Group | Date |
| Tenant | Date | | |
| Tenant | Date | | |
| Tenant | Date | | |

# Internet Service Lease Addendum

This Internet Service Lease Addendum ("Internet Addendum") is effective as of the commencement date of the Lease and agreed upon between the Tenant and the Landlord. This Internet Addendum provides the terms and conditions of the Internet Service Package ("Internet Service") that delivers internet at a cost of ***$55.00*/month** ("Internet Fee"), payable with your monthly rent. Please see below for the terms and conditions of the Internet Package.

**Internet Service:** Tenant shall be granted access to the Landlord's high-speed Internet Service at the Property, which is provided by Landlord's designated third-party service provider(s) (the "ISP") at speeds of up to 1 Gig. Tenant must comply with the ISP's terms and conditions and acceptable use policy, accessible on the ISP's website ("ISP Policies"). Tenant's use of the Internet Service shall be deemed acknowledgment that Tenant has read and agreed to the ISP Policies. In the event the Tenant does not agree to be bound by the ISP Policies, the Tenant should immediately stop their use of the Internet Service and contact the Account and Technical Support, noted below, to terminate the Internet Service.

**Account Activation; Equipment**: To obtain the necessary ISP equipment and activation of Internet Service, Tenant may be required to activate an account directly with the ISP. Upon receipt of the ISP equipment, Tenant may be required to self-install the equipment and any questions regarding installation shall be directed to the ISP, per the instructions provided by the ISP with the equipment. The Landlord does not provide technical assistance for the Internet Service or third-party hardware or software, including but not limited to wired and wireless routers, computers, printers or smart devices. Landlord shall not be responsible for the operation or support, maintenance or repair of any equipment, software, or services that the Tenant elects to use in connection with the Internet Service.

**Access Requirements:** Tenant grants access to the Property to the Landlord, the Landlord's service provider, and the ISP, for purposes of installation, repair, maintenance, and service of the Internet Service and related equipment. Except in the event of emergency maintenance, Landlord shall provide the Tenant with at least 24 hour's advance written notice to access the Property for the purposes stated herein. Tenant agrees not to prevent or interfere with such access, provided, however, that the Landlord has met the notice requirements as provided herein.

**Service Speed**: Tenant understands and agrees that the Landlord does not guarantee that any particular amount of bandwidth on the network or that any speed or throughput of Tenant's connection to the network will be available to Tenant. Tenant understands and agrees that the speed of the Internet Service provided at the Property will vary depending upon a number of factors, including Tenant's computer system(s) and associated equipment (e.g., Tenant-sourced WiFi routers/access points, etc.), Internet traffic, and other factors such as system capacity limitations, governmental actions, events beyond Landlord's control, and system failures, modifications, upgrades and repairs. Tenant understands that Tenant's wireless connections and use of wireless routers may be subject to greater fluctuations in speed and latency and may be adversely affected by interference, congestion, distance, and other outside factors.

**Internet Fee:** Except for the first month of the Lease, the Internet Fee shall not be pro-rated for any partial month. This Internet Fee includes the cost of the Internet Service, any applicable activation and ISP equipment charges, and an administrative fee for the enrollment and administration of the Internet Service as performed by the Landlord, and any additional cost incurred by the Landlord for the provision of the Internet Service. Any additional charges incurred by Landlord or its service provider due to the Tenant's misuse of the Internet Service or violation of the ISP Policies are not included in the Internet Fee and shall be billed separately to the Tenant, in addition to the monthly rent, and due immediately upon receipt of such notice from Landlord.

CR KE

**Internet Use Risks**: Tenant acknowledges and agrees that when using the Internet Service to access the Internet or any other online network or service, there are certain risks that may enable other Internet users to gain access to or use of Tenant's equipment. Tenant is responsible for taking and should take all appropriate security measures when using the Internet Service. Tenant assumes sole responsibility for Tenant's equipment used in conjunction with the Internet Service and for providing and configuring any security measures for use with the Internet Service to prevent damage from viruses, malware, or other similar malicious items and to prevent unauthorized access to the Internet Service, and Tenant shall be solely responsible in any manner for the effectiveness of these blocking and filtering technologies. Landlord does not warrant that others will be unable to gain access to Tenant's computer(s) and/or data even if Tenant utilizes blocking and filtering technologies, or that the data or files will be free from computer viruses or other harmful components. Landlord has no responsibility and assumes no liability for the protections Tenant may employ nor for any damages that may arise from using the Internet Service.

**Prohibited Activities**: Tenant will not use, or allow others to use, the Internet Service for any activity that violates any local, state, federal, or international law, order or regulation. Prohibited activities shall also include, but are not limited to, (1) posting or disseminating material which is unlawful (such as child pornography or obscene material, (2) disseminating material that violates copyright or other intellectual property rights for others, (3) pyramid or other illegal soliciting schemes, (4) any fraudulent activities, or (5) reselling, sharing, or otherwise distributing the Internet Service, or any portion thereof to any third party, without the written consent from the ISP.

**Right to Terminate Internet Service:** The Landlord and/or HomeRiver Group and the ISP, shall have the right to terminate the Internet Service, without notice, upon any violation, or breach, of the ISP Policies or this Internet Addendum. The Internet Service may also be suspended or terminated in the event of any of the following: (a) strikes, severe weather, earthquakes, pandemic, civil unrest or other such force majeure events beyond the Landlord's control that affects the Internet Service to the extent that the Internet Service is deemed inoperable; (b) any law, action or ruling by any governmental authority is enacted or issued and prohibits or modifies the Landlord's ability to provide the Internet Service; (c) non-payment of the Internet Fee by the Tenant; or (d) the Tenant defaults on the Lease.

**Internet Service Opt-Out:** To opt-out of Internet Service, Tenant must contact Account and Technical Support.

**Account and Technical Support**: For Internet Service account and technical support, please contact:

Service Provider Customer Support
Telephone No.: (866) 921-3777
Email: residenthelp@secondnature.com

Upon execution by the Landlord and/or Landlord's agent and the Tenant of this Internet Addendum, the Tenant shall be automatically enrolled in the Internet Service, and the above-mentioned Internet Addendum shall be considered as part of the Lease and legally binding on all parties.

| | | | |
|---|---|---|---|
| ______________________________ | | *Christopher Ross* | 06/02/2026 11:43 |
| Landlord | Date | Tenant | |

Or signed for Landlord under written property management
Agreement: Tenant

*Kelly Espinoza* 06/02/2026 16:42 Tenant

*CR* *KE*

Printed Name: ***Kelly Espinoza***

On Behalf Of:
Firm Name: HomeRiver Group_ Tenant